The sentence will be reformed in accordance with this opinion.

As reformed, the judgment is affirmed.

On Appellant's Motion For Rehearing

DAVIDSON, Commissioner.

Appellant renews his insistence that the facts do not warrant the conviction. He insists that the facts show only the relation of debtor and creditor and that the false representation that a check was then in the mail to cover prior purchases and that he would send a check by the truck driver for the order he was then making did not alter or change the legal effect of the purchase, nor did it constitute such a false pretext as would authorize this conviction.

■ Whether the facts show theft by false pretext or swindling need not be determined, for the state was authorized to maintain this prosecution for theft by false pretext upon facts which might also show swindling. Art. 1549, Vernon's Ann.P.C.; King v. State, 152 Tex.Cr.R. 255, 213 S.W. 2d 541.

So then if the facts show swindling —that is, the acquisition of personal property by some false pretenses with intent to appropriate the property so acquired, art. 1545, Vernon's Ann.P.C., this conviction for theft by false pretext under art. 1413, Vernon's P.C., will be sustained.

The correctness of appellant's contention that the purchase of goods on credit does not constitute either theft by false pretext or swindling is not questioned.

■ Here, the false representation by the appellant that he had already forwarded a check in payment of a prior credit purchase constituted such a pretext, when relied upon by the injured party in parting with his property, as would constitute swindling. Burck v. State, 132 Tex.Cr.R. 628, 106 S.W.2d 709.

We remain convinced that the facts warranted the conviction, and that a correct conclusion was reached originally.

Other matters presented in the motion for rehearing but challenge our original conclusion, with nothing new presented in connection therewith.

The motion for rehearing is overruled.

Opinion approved by the court.

KRUEGER, HUTCHINSON & OVERTON CLINIC

v.

LEWIS.

No. 6360.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 4, 1954.

Rehearing Denied Feb. 1, 1954.

Klett, Bean & Evans, Crenshaw, Dupree & Milam, Lubbock, for appellants.

Boling & Smith, Lubbock, for appellee.

PITTS, Chief Justice.

Appellants, Dr. J. T. Krueger, Dr. J. T. Hutchinson, Dr. Ben D. Hutchinson and Dr. M. C. Overton, composing what is known as Krueger, Hutchinson and Overton Clinic of Lubbock, Texas, sought an injunction restraining appellee, Dr. Richard

Q. Lewis, from violating a written agreement executed by him and the Clinic in connection with appellee's employment by appellants, providing in part that if such employment of appellee ceased, he would not thereafter practice his profession in Lubbock County. A hearing was held before the trial court without a jury and with all parties present on June 27, 1953, as a result of which the trial court, after considering all the pleadings, including appellants' motion for a summary judgment, together with affidavits of appellants and a deposition of appellee, sustained an exception of appellee to the petition of appellants, held the contract invalid and dismissed appellants' alleged cause of action upon their refusal to amend and thereby denied appellants' motion for summary judgment. Appellants perfected an appeal from such judgment.

Appellants pleaded, in effect, in their original petition filed January 19, 1953, that they had established the Clinic and had been practicing medicine and surgery in Lubbock for many years; that by work, study and skill they had established themselves as successful physicians and surgeons and had established a good reputation for the Clinic which merits a large patronage in and around Lubbock, which area has grown in recent years in population, increasing their number of patients and necessitating an expansion of their staff of physicians and surgeons in various branches of medical science in order to adequately care for the needs of their patients; that they have added young physicians of good reputations and evidenced talents to their staff and have pursued the practice of advancing them as rapidly as their talents, ability and experience would justify by furnishing them the facilities of the Clinic and an opportunity for advancement professionally and financially; that on or about January 2, 1950, appellee was so admitted to the staff of the Clinic under contract as hereinafter set out which bound him legally and morally according to its terms and as a member of the Clinic staff whereby he was furnished office space and facilities for the proper practice of his profession and in addition thereto appellants paid him approximately $40,000 during a period of three years; that during the said period appellants caused appellee to contact many patients, who formed a close intimate acquaintance and relationship with him; that by reason of such friendships and relationships so formed through appellants and their Clinic, appellee will draw after him and away from the Clinic, because of his departure therefrom as later herein set out, many patients in violation of the terms of the contract; that appellants have fully and completely performed each and every obligation imposed upon them by sharing their profession and business with appellee which resulted in his advancement professionally and financially until he voluntarily and without fault of appellants severed his association with appellants by a letter written to them on January 5, 1953, which letter is hereinafter copied in full; that appellee soon thereafter began the practice of his profession in Lubbock and solicited business in violation of the terms of the contract in question and will draw many patients from appellants' Clinic, thus causing appellants to suffer hardships, pecuniary losses, irreparable damages and injury for which reason they sought injunctive relief.

A copy of the contract attached to appellants' pleadings as "Exhibit A" is as follows:

"Lubbock, Texas, January 2, 1950
"Krueger, Hutchinson and Overton Clinic hereby admits Dr. Richard Q. Lewis to its staff.

"The said employee agrees to give to said employers all of his time while engaged in such services for them, and to assist them in any way necessary to help in the work of the Clinic and Hospital.

"In consideration of the fact that said employers will be incurring incalculable cost and expense, in a professional and financial way, in admitting the said employee to the staff of said Clinic, and that the employers will suffer more or less irreparable damage if and when employment ceases, the said employee agrees that at any time his

association or connection with said employers is severed, he will not thereafter practice his profession in Lubbock County, and that he will not in any way undertake to induce any technician, assistant, nurse or other employees to cease his association or connection with said employers or Clinic.

"It is hereby agreed that such employment shall cease if, at any time, in the judgment of the employers, such employee becomes dishonest, disobedient, or disloyal, or his service inefficient, unprofitable or unsatisfactory, or should the relationship of employer and employee otherwise be terminated by mutual consent or operation of law.

 Krueger, Hutchinson & Overton Clinic
    Employers
  By /s/ C. E. Hunt
   /s/ Richard Q. Lewis
   Employee"

Appellee's letter hereinabove referred to and a copy of which was attached to appellants' pleadings as "Exhibit B" is as follows:

  "Krueger, Hutchinson &
   Overton Clinic
     Lubbock, Texas
     January 5, 1953
"Department of Surgery
"J. T. Krueger, M. D.
"J. H. Stiles, M. D.
"A. W. Bronwell, M. D.
"A. Lee Hewitt, M. D.
"R. Q. Lewis, M. D.
"J. H. Selby, M. D.
 "The Board
 Krueger, Hutchinson and Overton
  Clinic
 Lubbock, Texas
 "Gentlemen:
"With extreme reluctance I find it necessary, for personal reasons, to submit my resignation from the Staff of Krueger, Hutchinson and Overton Clinic, effective immediately. However, if it is the desire of the board, I shall be perfectly willing to remain on the active staff until a suitable replacement can be obtained, but this cannot be for a period of more than sixty days.

"I wish to express my appreciation to the board for their more than generous and patient consideration of my almost constant expressions of discontent while working here during the past three years.

"Since it is my fervent belief that the city of Lubbock is now of a size adequate to support at least four orthopedic surgeons, that the board will see fit to recognize my right to pursue my profession in the city of Lubbock without penalty.

   "Respectfully submitted,
     /s/ R. Q. Lewis
RQL/cw  "R. Q. Lewis, M. D."

Appellee answered with many exceptions, supported by defensive pleadings, alleging the contract was harsh and unreasonable, the recent growth of Lubbock County, the number of physicians practicing there, that it would be expensive for appellee to move, that he then had many patients in his private practice, that the contract is void and unenforceable and particularly "In this connection, said restrictive covenant sought to be enforced by plaintiffs is also unreasonable as to time, in that if this defendant were required to be absent, or cease to practice his profession in Lubbock and Lubbock County for any length of time at all, this defendant would lose his said practice for the reason that the patients and clients of this defendant would necessarily be required to seek treatment and care elsewhere and would not come back to this defendant after he had been compelled to move from Lubbock County."

In their appeal appellants have presented three points of error, which will be herein stated as we discuss them. Their first point charges error by the trial court because it sustained appellee's exception No. 2 to the petition of appellants and held that the contract sought to be enforced was invalid because it, although limited as to space, was unlimited as to time. The trial court, after considering the pleadings, the supporting affidavits of appellants and the deposition of appellee and the argument of

counsel, sustained, appellee's special exception contained in paragraph two of his answer for the reason there was no restriction time limit shown in the contract, concluded the law in the case favored appellee and held the contract sued on to be invalid and unenforceable for such reason and the trial court gave no other reason for its judgment.

Appellee's special exception number two as pleaded in his answer to appellants' petition is set out in the following language:

"Defendant comes and specially excepts to said petition for the reason that the purported contract set out in plaintiffs' petition as Exhibit 'A' is void and unenforceable insofar as it attempts to restrict the right of defendant to practice medicine and surgery for the remainder of his life in Lubbock County, Texas, for the reason that such period of restriction is harsh and unreasonable and is in restraint of trade."

In connection with this matter the result of the action of the trial court presents only the question of whether or not a covenant or agreement in a contract of employment, though reasonably limited as to space, is void and unenforceable because it is unlimited as to time. Appellee levelled another special exception to appellants' petition on the grounds that the restriction of space to Lubbock County in the contract was unreasonable and was therefore void and unenforceable. There is nothing in the record to show that this and other special exceptions were ever called to the attention of the trial court, in which event they were waived by appellee. However, the trial court asserts it read and considered all of the pleadings and in its final judgment sustained only the special exception in question as to the restriction of unlimited time, without therein showing any specified action having been taken by the trial court on the other special exceptions, including the one concerning limited space. It must therefore be presumed that they were all overruled, if the trial court read and considered them, and appellee has made no complaint here about such action on his

other exceptions, especially concerning the one with reference to limited space. The rule with reference to space limitations, as often announced by the courts, is usually determined by the territory served professionally in such cases. Here appellants' allegations, which must be accepted as true in passing on exceptions, show that patients came to the Clinic from all sections of Lubbock County and even further from surrounding territory. There was also undisputed evidence to that effect before the trial court. It was recently held under similar circumstances that Bexar County, Texas, was a reasonable space limitation in such a case since patients came to the clinic there from all sections of the county and from adjoining counties. Parker v. Smith, Tex.Civ.App., 254 S.W.2d 144. Since the space restriction is held to be reasonable, the time restriction should not be a difficult problem, particularly since appellee pleaded that he would lose his patients and his practice if he were limited to any length of time. Because of such admission by appellee, an unlimited time for him would be the same as a specific limited period of time of any duration.

The weight of authorities in the United States and in various states, including Texas, hold that where the restrictive covenant in such cases is reasonably limited as to space, the fact that it is unlimited as to time does not invalidate the contract.

The rule is stated as follows in 17 C.J.S., Contracts, § 244, pages 624–625:

"Generally, an agreement imposing a restraint reasonably limited in space is not against public policy, although unlimited in time of operation, regardless of the nature of the business or occupation restrained. * * * Thus the Courts have repeatedly sustained as valid agreements by the vendor of a business, trade, or profession, or by employees, etc., without limitation as to time, not to carry on the business, trade, or profession in a certain town, village, city, or county, even though it be a large city".

Authorities from several jurisdictions, including Texas, are there cited in support of the statements made.

In 36 Am.Jur., § 79, Page 556, Note 16, it is stated:

"Few professional men would take assistants and intrust them with their business, impart to them their knowledge and skill, bring them in contact with their clients and patients, unless they were assured that the knowledge and skill imparted and the friendships and associations formed would not be used, when the services were ended, to appropriate the very business such assistants were employed to maintain and enlarge."

Several authorities are there cited.

In 58 A.L.R., page 162, under the head of "Restrictions Incident to Contract of Employment", it is said:

"It is a firmly established doctrine that a member of one of the learned professions, upon becoming assistant to another member thereof, may, upon a sufficient consideration, bind himself not to engage in the practice of his profession upon the termination of his contract of employment, within a reasonable territorial extent, as such an agreement is not in restraint of trade or against public policy. Such contracts have been held valid where made by physicians, surgeons, and others of the healing profession."

Authorities are there cited from various states of the union in support of the statement made.

In 28 Am.Jur. § 107, Page 300, it is said:

"Contracts by physicians and surgeons, whether made in connection with the sale of their practice, with a contract of employment, or with a contract of partnership, not to engage in the practice of their profession within a restricted area after such sale, or after termination of the employment or partnership relation, are usually held to be valid, and the injured party under ordinary circumstances is held entitled to invoke the aid of equity to enjoin a breach thereof."

In the case of Patterson v. Crabb, Tex. Civ.App., 51 S.W. 870, writ dism., an unlimited restrictive covenant as to time was held valid and injunctive relief ordered on appeal wherein Crabb had been employed as a music teacher by Patterson under a contract of employment in the City of Hillsboro and Crabb there agreed that he would not establish a school of any kind in Hillsboro if his employment were terminated.

In the case of Langever v. United Advertising Corporation, Tex.Civ.App., 258 S.W. 856, it was held that an agreement between two firms engaged in the bill posting business in the City of Fort Worth, that one of them should not thereafter engage in such business in such City, was not contrary to public policy, as unreasonable restraint of trade even though the duration of the agreement was unlimited as to time.

In the case of Moore v. Duggan Abstract Co., Tex.Civ.App., 154 S.W.2d 519, writ refused for want of merit, it was held that, although there was no limitation as to time, agreement "not to re-enter the abstract business in Denton County" was enforceable by injunction, and that one can lawfully agree not to compete in a particular business during the remainder of his life in a reasonable limited territory.

In the case of Randolph v. Graham, Tex.Civ.App., 254 S.W. 402, writ ref., it was held that a physician's agreement with the purchaser of his practice not to practice in the same town or within a radius of 20 miles was not void as against the contention that the failure to limit the time made the contract one against public policy. The court there said in part:

"Whatever the strict rule of the common law may have been in condemning contracts in restraint of trade, such doctrine is much modified in America, and is not ordinarily made to apply to the contracts of professional men, * * *.

"We see no reason whatever to broadly hold such a contract void. It is a property right, personal in its nature, and should be left to the liberty and freedom of contract. There is no such public policy involved in it as would require the physician to keep his good will for his own interest or restrain him from abandoning his practice and selling out his estate and good will together. Such a sale is contractual and thereby lawful.

\* \* \* \* \* \*

"An important question here for us to decide is on the validity of the contract, raised by appellant, to the effect that, because the agreement being without time limit, appellant contracted and bound himself never again to practice his profession within that territory, which rendered the contract a nullity as against public policy.

"No authority is cited to sustain the contention that such an agreement never to practice his profession again in any given territory, or at all, is wholly void.

\* \* \* \* \* \*

"If one has the right to make a contract binding himself not to practice his profession for a great number of years, in a large or limited area, why not be allowed to make the same contract permanent, or at least during the life of the purchaser? What interest has the public in a professional man, that would deny to him such liberty of contract? In the case of Glover v. Shirley, 169 Mo.App. 637, 155 S.W. 878, discussing the validity of such contracts, among other things, it was said:

" 'The doctrine had been at rest ever since Lord Kenyon declared in Davis v. Mason, 5 T.R. 118, in which the bond of a surgeon not to practice medicine within 10 miles of the place where the obligee lived was held good.' "

That case was cited with approval and quoted at length in the case of Latham v. Butler, Tex.Civ.App., 17 S.W.2d 1083, writ ref., involving a similar question of unlimited time as to a doctor's practice. The same case was again cited with approval in the case of Perdue v. Hughes, Tex.Civ.App., 143 S.W.2d 684, writ dism. judgment correct, involving a time limit, however, of only two years.

A ten-year time limit within a radius of ten miles was sustained in a doctor's contract in Wolff v. Hirschfeld, 23 Tex.Civ. App. 670, 57 S.W. 572. An unlimited time restriction in the pumping and windmill business was held valid by this court in the case of Schlag v. Johnson, Tex.Civ.App., 208 S.W. 369. Numerous other jurisdictions have many times held an unlimited time restriction, such as is being here considered, valid, some of which cases were: Styles v. Lyon, 87 Conn. 23, 86 A. 564; Turner v. Abbott, 116 Tenn. 718, 94 S.W. 64, 6 L.R.A.,N.S., 892; Tillinghast v. Boothby, 20 R.I. 59, 37 A. 344; Storer v. Brock, 351 Ill. 643, 184 N.E. 868; and Dow v. Gotch, 113 Neb. 60, 201 N.W. 655. There are numerous court holdings in Texas and other jurisdictions to the effect that a contract is valid as to time where the period of limitation runs from two to ten years. A restriction of professional men not to practice for two or three years probably has the same effect as one for ten years or for a lifetime. Appellee, in effect, admits such to be true in his pleadings when he pleaded that a restriction of his practice in Lubbock and Lubbock County "for any length of time at all" would cause him to lose his patients and practice and necessitate a move from Lubbock County.

With reference to public policy and the sacred right of men to voluntarily execute a binding contract the court said in the case of Erikson v. Hawley, 56 App.D.C. 268, 12 F.2d 491, 494:

"It must not be forgotten that we are not to extend arbitrarily those rules which say that a given contract is void, as being against public policy, because

if there is one thing which more than another public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice. Therefore we have this paramount public policy to consider—that we are not likely to interfere with this freedom of contract.' *That is but saying that substantial justice and the obligation of contracts are entitled to superior consideration to the vague and indefinite notions of public policy, urged to avoid a contract for which the party has received full consideration. Such a defense always comes with a bad grace from a party to the contract who has received full consideration, and enjoyed the fruits of the contract that he alleges to have been made in contravention of law or principles of public policy.*"

■ Appellee also excepted to appellants' petition on the grounds the contract was without consideration and no consideration was shown at the time it was executed. It must be presumed such exception was either waived by appellee or was overruled by the trial court for the reasons previously herein stated. At any rate, the only valid defensive grounds the trial court gave in its final judgment for holding the contract invalid was the unlimited time restriction and appellee seeks to uphold the trial court and does so without filing any cross-assignments or complaining in any way about any other rulings or holdings of the trial court. But, be that as it may, appellants' affidavits and appellee's deposition were before the trial judge, who states in his judgment that such were considered by him. In his deposition appellee testified, in effect, that when the written contract was executed, he and appellants had an oral agreement that he would be paid a salary of $800 per month for his professional services for the first year of 1950, together with office space and clinic facilities furnished by appellants, that the oral contract was renewed for a year at the beginning of the next year of 1951 with an increase of salary to $1,000 per month, that the same was again renewed for a year at the beginning of the year 1952, paying him on a percentage basis that amounted to approximately $20,000 for the year, and that such sums were paid to him by appellants, thus making his total pay for the three years more than $40,000. Because of appellee's admission that simultaneously with the execution of the written contract, his salary for the first year was orally agreed upon by the parties and that an annual renewal with a substantial raise each year was likewise agreed upon by the parties, all of which appellants paid, such constitutes a valuable consideration that renders the contract binding upon appellee. Hutchings v. Slemons, 141 Tex. 448, 174 S.W.2d 487, 148 A.L.R. 1320; Big Four Ice & Cold Storage Co. v. Williams, Tex.Civ.App., 9 S.W. 2d 177, writ ref.

■ Appellee contends "that where a contract provided that employer could terminate employment at any time, the employment could be terminated at any time by either party" and cites the case of May v. Lee, Tex.Civ.App., 28 S.W.2d 202, in support of his contention. We find no fault with such a statement. At any rate, appellee terminated the contract at will here in question. But in such event, there may be contractual obligations expressed to be thereafter observed by either or both of the parties, for which liability still exists.

Appellee likewise cites the case of Parker v. Slayter, Tex.Civ.App., 238 S.W.2d 814, in support of his contentions here made. In that case a chiropractor sought to enforce a contractual restrictive clause against another chiropractor practicing after he had been arbitrarily discharged. In that case the trial court conducted a full hearing upon the facts before denying the relief sought for the reason that plaintiff had first breached the terms of the contract and he had not come into a court of equity with clean hands. We have no such situation as that in the case at bar.

Appellee has likewise, with the permission of the court, presented us with an additional authority since the case was submitted and argument heard wherein he claims this court made a holding that supports his contentions here made in a different kind of a case, however, styled Portland Gasoline Co. v. Superior Marketing Co., Tex.Civ.App., 240 S.W.2d 346. But appellee has failed to follow the report of the Texas Writs of Error Table to find that the holdings there made by this court upholding the trial court were reversed by the State Supreme Court as reported in 150 Tex. 533, 243 S.W.2d 823.

After a careful examination of the record and the briefs, together with numerous authorities on the subject in this and other jurisdictions, it is our opinion that the great weight of authorities in this State and in other jurisdictions uphold the validity of a restrictive covenant unlimited as to time, particularly where it is reasonably limited as to space, as this one was, and that the trial court erred in sustaining the special exception of appellee attacking the contract in question and charging it to be invalid because it was unlimited as to time.

Appellants further contend in their second point of error that the trial court erred in denying their motion for a summary judgment under the record previously herein discussed, the uncontroverted facts presented in affidavits and a deposition before the court, showing conclusively that appellants would suffer loss by reason of appellee's voluntary breach of his valid agreement.

Appellee is bound by the admissions he made in his pleadings filed February 4, 1953. In such pleadings he said in part that in the event he were required to move from his location in Lubbock and establish himself elsewhere "he would necessarily be required to live in such other location for an indefinite period of time before he could make sufficient acquaintances and create confidence in himself on the part of the public and in his ability be-fore he could build up a practice from which he could earn sufficient monies to sustain himself financially * * *." If such be true elsewhere, it must have been true when he first moved to Lubbock, except for the help, influence and reputation of appellants. Appellee further pleaded that "he did not sell any established business to plaintiffs, nor did he attempt to convey to them any good will, but that his employment, solely, was involved * * *." Appellee likewise alleged:

"* * * that he visited Lubbock and was pleased with the prospects offered by a progressive and growing city and desired to live and practice his profession there; that he did not want to sign said purported contract but that plaintiffs told him that he would have to sign said instrument before he could get employment from them; that such restrictive provision requiring him to never practice in Lubbock County in the event he severed his connections with, or was discharged by plaintiffs, was an absolute requirement in order for him to obtain employment with said plaintiffs; that he signed said purported contract because he was required to by his employers in order to obtain employment * * *."

Appellants took the oral deposition of appellee and thereafter on June 10, 1953, filed their motion for a pretrial conference and for a summary judgment upon the grounds that it conclusively appeared as a matter of law from the pleadings and affidavits attached to the motion, together with the admissions made by the appellee in his deposition on file, that the contract previously herein discussed and set out in full obligated and bound appellee not to engage in the practice of his profession as a physician in Lubbock County, Texas, if he severed his connections with appellants and the same is a valid and enforceable contract. The trial court set a date for the hearing and pretrial and the same was postponed for a couple of weeks but was later had when the pleadings were heard, the affidavits of appellants and appellee's deposition were introduced.

Appellee's deposition reveals that he began work for appellants under the terms of the contract in question on 'January 2, 1950; that he had never previously practiced his profession for the public until he began work with appellants' Clinic, although he had had some experience in school or training; that prior to that time he had never practiced in Lubbock or had office in Lubbock in the practice of his profession; that he voluntarily severed his connection with the Clinic and with appellants by letter of date January 5, 1953, which letter has been previously herein set out in full, and that he believed he could have stayed with the Clinic indefinitely had he not elected to leave it. In the said letter appellee said in part:

"With extreme reluctance I find it necessary, for personal reasons, to submit my resignation from the Staff of Krueger, Hutchinson and Overton Clinic, effective: immediately.

\* \* \* \* \* \*

"I wish to express my appreciation to the board for their more than generous and patient consideration \* \* \* "

He further testified that appellants as operators of the Clinic had been generous and patient in their consideration of him during the time he was connected with them and that at the time he came they advanced to him the sum of $400 toward the expense of his move and paid his salary three consecutive years as previously herein shown; that he signed the contract in question and that his reason for severing his connection with the Clinic was because he desired to get out and establish his own personal office and business. Appellee further testified that he agreed at the time he went to work for appellants in the Clinic that he would not, either for himself or in association with others, conduct the practice of his profession in Lubbock County; that he wanted the position at Lubbock; that he read the contract over and understood it before signing it and knew he was obligating himself not to practice his profession in Lubbock County

if he should cease his connection with the appellants' Clinic; that he knew he was being employed strictly as an employee at the monthly salary previously stated with an office and clinical and hospital facilities furnished him without expense to him; that the salary of $800 per month he began with was about $500 a month more than he had been getting before coming to Lubbock; that it takes time for a doctor to work up a clientele in private practice; that when he arrived at Lubbock to go to work, there were eight patients waiting for him the first day he arrived and there was never a time while he was there that there were not at least that many patients waiting for him as a result of the Clinic system he found in operation there; that appellants, through the Clinic and otherwise, aided him materially in building him up professionally; that he at the time deposition was taken had been in business for himself and engaging in private practice in Lubbock for about three months or more since January 7, 1953; that it was perfectly obvious that the patients that he had treated and satisfied while working for appellants' Clinic would follow him if he remained in the practice in Lubbock and that he was sure a number of patients appellants had previously referred to him were then still coming to him for professional services.

The affidavits of appellants, Doctor J. T. Krueger, Doctor J. T. Hutchinson and Doctor M. C. Overton, attached to the motion for summary judgment, are identical as to the material parts thereof. They show the respective names, academic and professional training of the doctors and that their Clinic has been continuously operated in Lubbock since May 1, 1920, serving the area in and around Lubbock and adjoining counties; that the clinical staff had been composed of reputable and successful physicians of medicine and surgery, who had established a good reputation for the Clinic, as a result of which large numbers of patients, averaging 90,000 per year, had been coming to the Clinic from Lubbock and surrounding counties for clinical service; that it has been the

practice of the Clinic to employ young reputable physicians with ability in their respective branches of medicine and have advanced them professionally and financially and helped them to form acquaintances and friendships with hundreds of patients and patrons of the Clinic; that any such young physician so connected with the Clinic for several years would take with him many of the patients and Clinic patrons he had gotten acquainted with intimately and treated successfully by reason of contacts made through the Clinic management if he severed his connection with the Clinic and began private practice; that appellee, after severing his connection with appellants and their Clinic, has opened an office in Lubbock and by advertisement of such facts solicited patients to come to him when they would otherwise go to appellants' Clinic for medical and professional services where they had previously secured such services; that many of the former patients had been introduced to appellee by appellants' Clinic staff while he was associated with the Clinic and had been treated by him and he formed close and intimate ties of a physician and patient with them, as a result of which they have gone to him for diagnosis and treatment since he has opened his office for private practice in Lubbock; that the exact number of such patients is not known to affiants but a large number of them have done so; that the exact loss appellants have suffered and will suffer is incapable of ascertainment, but a large number of appellants' former patients and patrons of the Clinic would never return to the Clinic by reason of appellee's actions and conduct, thus causing appellants injuries, pecuniary losses and irreparable damages.

After hearing and considering the pleadings, the motion for summary judgment, the deposition and affidavits, the trial court denied the motion for summary judgment because it "is of the opinion that the law is for the defendant, and that the contract in question is invalid, for the reason that the period of time during which the restriction shall operate is not limited as to time".

It appears from the pleadings in the case, the deposition of appellee and the affidavits of appellants that the following facts have been established without dispute: that prior to appellee's employment by appellants, he had had little experience in the practice of his profession and he was unacquainted professionally in Lubbock and Lubbock County and had no patients or patrons who might there desire his medical services; that the written contract sued on was executed in connection with an oral agreement of employment by which appellants employed appellee to work professionally in their Clinic at a salary of $800 per month for the first year, at a renewal agreement for a salary of $1,000 per month for the second year and for a renewal agreement of pay on a percentage basis that amounted to approximately $20,000 for the third year; that appellee began work at a salary far exceeding his previous salary before coming to Lubbock and that appellants also furnished him without cost an office and clinical facilities for work and had advanced him $400 to enable him and his family to move to Lubbock; that the Clinic furnished patients to appellee on an average of eight or more per day for a period of three years; that appellee read and understood the contract before signing it voluntarily and knew he would not be employed by appellants unless he entered into the agreement; that he voluntarily severed his connection with the Clinic on January 5, 1953, knowing he had agreed not to enter practice in Lubbock County after severing his connection with the Clinic; that appellee had since opened an office in Lubbock County, Texas, contrary to the terms of his agreement and had advertised for business and expected patients whom he had become acquainted with and treated while connected with appellants' Clinic would follow him and that a number of them had already followed him, thus causing appellants a loss of patients and patrons as well as a financial loss that could not be exactly determined but the same was a substantial loss at any rate. The admissions of appellee previously herein referred to as to oral agreement between the parties when the written contract

was executed concerning appellee's first monthly salary, the annual renewal thereof twice with a substantial raise in salary each year, created a mutually binding contract based upon a valuable consideration in any event, although a part of the contract was in writing and a part of it was oral and agreed to by the parties at the time the written contract was signed. Hutchings v. Slemons, supra, and other authorities previously cited.

■ According to the pleadings, the undisputed facts presented and the authorities cited, it is our opinion that the contract between the parties is a valid and enforceable contract and that the trial court's judgment must be reversed and the cause remanded to the trial court with directions that appellants' motion for summary judgment be sustained and their plea for injunctive relief be granted.

However, in their third point of error appellants urge that the unlimited time shown in the contract be reduced to three or five years by order of the court as a matter of equity if the unlimited time seems unreasonable in any respects. In support of their position they cite cases wherein Texas courts have reformed judgments and reduced restricted territorial areas as a matter of equity in cases similar to the one at bar and have thus limited injunctive relief to the particular area where the employee might injure his employer by soliciting previous customers whom he had attached to himself during the course of his former employment. McAnally v. Person, Tex.Civ.App., 57 S.W.2d 945; Burroughs Adding Mach. Co. v. Chollar, Tex.Civ.App., 79 S.W.2d 344; City Ice Delivery Co. v. Evans, Tex.Civ. App., 275 S.W. 87; Bettinger v. North Fort Worth Ice Co., Tex.Civ.App., 278 S.W. 466; Grace v. Orkin Exterminating Co., Tex.Civ.App., 255 S.W.2d 279.

■ We find no fault with the rules of law and equity announced in the foregoing cases cited with reference to reducing the territory in such cases. We have found no rules of law or equity,

however, authorizing a reformation of judgment so as to reduce the period of time in such cases. We do believe that appellants' offer to accept a reduction of time limited "to three or five years" constitutes a waiver of a legal right on their part for injunctive relief for an unlimited time. For that reason this cause is reversed and remanded to the trial court with directions that appellants' motion for summary judgment be sustained and their plea for injunctive relief be granted for a period of three years from the date such judgment becomes final. Reversed and remanded with instructions.